*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

## MEMORANDUM OPINION

No. 04-08-00172-CR

Gilberto Gerardo **JUAREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2006-CRN-107-D3
Honorable Elma Teresa Salinas-Ender, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:    April 22, 2009

AFFIRMED

A jury found defendant, Gilberto Juarez, guilty of murder, and assessed punishment at forty years' confinement. On appeal, defendant asserts the State used perjured testimony to obtain his conviction, he was harmed by the omission of two defensive instructions, the trial court erred in denying his motion for new trial on the grounds of newly discovered evidence, and the evidence was insufficient to support the jury's implied rejection of his claim of self-defense. We affirm.

**DEFENSE OF SELF, DEFENSE OF OTHERS, AND SUDDEN PASSION**

On appeal, defendant asserts he acted in self-defense and to defend his friends when he fired his gun. He also contends, on appeal, that he fired his gun under the immediate influence of sudden passion arising from an adequate cause.

There is no dispute that the confrontation, which led to the shooting death of Daniel Fraga, began when Fraga and his friends got into an argument with defendant and his friends. All the parties involved were in vehicles traveling along San Bernardo Street in Laredo, Texas. The street was heavily congested and traffic was at a standstill when the van in which Fraga was a passenger attempted to pass by a car in which defendant was a passenger. When the driver of the car refused to allow the van room to pass, the driver of the van began yelling at the driver of the car. Eventually, the van's driver, as well as both passengers, one of whom was Fraga, got out of the van and approached the car. Andy Garady, Fraga's friend and a passenger in the van, testified that once the driver got out of the van, the parties "were going to get into a fight or something." He thought the van's driver, Juan Cruz, may have gotten out of the van holding a bottle. Cruz denied he had a bottle in his hand, but he admitted he approached the car yelling "bad words" and he intended to get "in a fistfight . . . only." Cruz said the occupants of the car looked "scared," but they did not exit their vehicle. Instead, defendant began firing his gun and the three men from the van ran away. Cruz was shot once in the stomach. Fraga sustained four gunshot wounds: one in the chest, one in the arm, and two in the back. The medical examiner stated the wounds were not sustained at close-range and were consistent with someone who is shot while running away. Police found no weapons near Fraga's body, which lay on the pavement where he died. Defendant was later arrested and, when

interrogated by the police, said he shot the gun because he felt threatened by the men in the van and he was concerned for the safety of his friends. Defendant claimed Fraga had something in his hand, but he did not know what Fraga held.

## A.     Self-Defense

On appeal, defendant asserts the evidence was factually insufficient to support the jury's implied rejection of his claim of self-defense.

A person "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PEN. CODE ANN. § 9.31(a) (Vernon Supp. 2008). If a person uses deadly force, his conduct is justified if (1) he would be justified in using force in self-defense, and (2) the use of force is to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a). A defendant has the burden of producing some evidence to support a claim of self-defense. *See Zuliani v. State,* 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State,* 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove the raised defense. *Zuliani,* 97 S.W.3d at 594; *Saxton,* 804 S.W.2d at 913; TEX. PEN. CODE ANN. § 2.03. However, the burden of persuasion is not one that requires the production of evidence; it requires only that the State prove its case beyond a reasonable doubt. *Saxton,* 804 S.W.2d at 913. When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Zuliani,* 97 S.W.3d at 594.

In this case, it was within the jury's province to resolve conflicts in the evidence and decide which version of the events to believe. *See Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *see also Mosley v. State,* 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). In doing so, the jury could reasonably conclude that defendant did not act in self-defense. Reviewing the record under the appropriate standard, we find the evidence factually sufficient to support the jury's rejection of defendant's self-defense claim.

**B.      Defense of Third Persons**

On appeal, defendant asserts he suffered egregious harm because the jury did not receive an instruction on defense of others. Defense counsel did not request such an instruction or object to the lack of such an instruction. We review claims of jury charge error under a two-pronged test. We first determine whether error exists. *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, we then evaluate the harm caused by the error. *Id.* The degree of harm required for reversal depends on whether that error was preserved in the trial court. *Id.* When, as here, error was not preserved in the trial court by timely objection, unobjected-to charge error requires reversal only if it resulted in "egregious harm." *Id.* "Harm is egregious if it deprives the appellant of a 'fair and impartial trial.'" *See Neal v. State,* 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

A defendant is entitled to an instruction on every defensive issue raised by the evidence regardless of the strength of the evidence. *Brown v. State,* 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). A defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Id.* A person is justified in using deadly force to protect another "[s]o long as the accused reasonably believes that the third person would be justified in using deadly force to protect himself."

-4-

*Hughes v. State,* 719 S.W.2d 560, 564 (Tex. Crim. App. 1986). Moreover, the actor must reasonably believe that his intervention is immediately necessary to protect the third person. *See id.*; *see also* TEX. PEN. CODE ANN. §§ 9.32(a), 9.33 (Vernon 2003 & Vernon Supp. 2008). In his statement to the police, defendant said he got out of the car when the van's driver threw a bottle and started throwing punches at his friend. When he got out of the car, he "started shooting at him [the van's driver]." Defendant then stated that he saw someone else get out of the van, with something in his hand, and he [defendant] ran away. Defendant said he only shot at the driver of the van, after he threw the bottle.

There is no evidence defendant reasonably believed his use of deadly force against Fraga was immediately necessary to protect his friends. There is no dispute that the argument arose between the drivers of the two vehicles. There is also no dispute that Fraga and his friends ran away when defendant began firing the gun. And, finally, there is no dispute Fraga was shot twice in the back. On this record, we cannot conclude defendant was entitled to a defense of third persons instruction; therefore, he was not harmed by the lack of such an instruction.

## C. Sudden Passion

Defendant also asserts he suffered egregious harm because the jury did not receive an instruction on sudden passion in the punishment phase of trial. During a trial's punishment phase, a defendant may attempt to mitigate his punishment by raising the issue as to whether "he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." TEX. PEN. CODE ANN. § 19.02(d) (Vernon 2003). "Sudden passion"

is "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1).

Before a defendant is allowed a sudden passion instruction, "he must prove there was an adequate provocation, that a passion or an emotion such as fear, terror, anger, rage, or resentment existed, that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). A "sudden passion charge should be given if there is some evidence to support it, even if that evidence is weak, impeached, contradicted, or unbelievable." *Trevino v. State,* 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). However, the evidence "cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury." *McKinney,* 179 S.W.3d at 569.

On appeal, defendant contends "[t]he continued threats, menacing presence, and close proximity of Mr. Cruz and his friends caused a high degree of terror . . . ." Defendant did not state in his statement to the police that he was so terrified he continued shooting after he shot Cruz and after Fraga had turned his back to run away, and there is no other evidence in the record to support this contention. For these reasons and the reasons stated above, on this record, we cannot conclude defendant was entitled to a sudden passion defense; therefore, he was not harmed by the lack of such an instruction.

**PERJURED TESTIMONY**

After Cruz and Garady testified, the State called Joel Vedarte to the stand. Vedarte testified he witnessed the shooting while in his car, which he claimed was within two feet behind defendant's car. Vedarte said he saw only one man get out of Fraga's van and this man held nothing in his hands. When he heard gunshots, he lowered his head, then stepped out of his car and "went straight to the body" to "try to save him." On cross-examination, Verdarte said he was a volunteer police officer at the time of the shooting. After trial, defendant filed a motion for new trial alleging Verdarte testified falsely when he said his car was immediately behind defendant's car, that he attempted to help Fraga, and that he was a volunteer police officer. On appeal, defendant asserts his due process rights were violated by the State's use of Verdarte's false testimony and the trial court erred in denying his motion for new trial on the grounds that Verdarte's false testimony affected the outcome of the trial.

Prosecutors have a constitutional duty to correct known false evidence. *Duggan v. State*, 778 S.W.2d 465, 468 (Tex. Crim. App. 1989). "It does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence." *Id.* The State violates a defendant's due process rights when it actively or passively uses perjured testimony to obtain a conviction. *Ex parte Castellano*, 863 S.W.2d 476, 481 (Tex. Crim. App. 1993). Such a violation occurs whenever the prosecutor has actual or imputed knowledge of the perjury. *Id.* On appeal, defendant concedes there is no evidence the State knew Verdarte's testimony was false; instead, he argues the State should have known the testimony was either false or misleading. We disagree. Although the record indicates the public defender's office

was aware of inconsistencies in Verdarte's testimony, there is no evidence the State was aware of any inconsistencies prior to putting him on the stand. Nor is there any evidence the State should have known in advance that Verdarte's car was not immediately behind defendant's car, that he was not a volunteer police officer, and he did not attempt to help Fraga. On this record, we conclude defendant did not establish the State had actual or imputed knowledge of the perjury; therefore, he has not established a violation of his due process rights or that the trial court erred in denying his motion for new trial.

## NEWLY DISCOVERED EVIDENCE

Finally, defendant asserts the trial court erred in denying his motion for new trial on the grounds that a new witness became available after trial and the witness would have provided testimony favorable to defendant. Specifically, defendant contends Daniel Escobedo, who was the driver of the car in which defendant was a passenger, was unavailable during trial and his whereabouts were unknown at the time of trial. In Escobedo's affidavit, submitted at the new trial hearing, he stated as follows:

> . . . [Fraga], the man that was killed that night, came out of the van he was riding in with a beer bottle in his hand. The driver of the van also came down with something in his hand. They approached us shouting obscenities. [Defendant] showed the gun to [Fraga] [who said] "You better use it or things are gonna get f— up."

A motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial court, and its decision, absent a showing of clear abuse of discretion, should not be disturbed on appeal. *Eddlemon v. State*, 591 S.W.2d 847, 849-50 (Tex. Crim. App. 1979). To establish a clear abuse of discretion by the trial court in denying a new trial, the appellant must present a record showing, among other requirements, that "(3) the new evidence is admissible and

is not merely cumulative, corroborative, collateral, or impeaching, and (4) the new evidence is probably true and will probably bring about a different result on another trial." *Id.* at 849. Here, Escobedo's testimony corroborated defendant's statement to the police that Fraga had something in his hand when he got out of the van. As for Escobedo's contention that Fraga said "You better use [the gun] or things are gonna get f— up," considering the evidence that Fraga was shot several times in the back, we cannot conclude Escobedo's testimony would have brought about a different result in another trial. Therefore, the trial court did not err in denying defendant's motion for new trial.

## CONCLUSION

We overrule defendant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

DO NOT PUBLISH